# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| CAROLYN S. DENNIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:08-CV-198-TLS |
| | ) | |
| JOHN E. POTTER, POSTMASTER | ) | |
| GENERAL, and UNITED STATES | ) | |
| POSTAL SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

The Plaintiff, Carolyn S. Dennis, sued her employer, the Postmaster General and the

United States Postal Service, alleging retaliation under Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e *et seq*. Because the original Complaint was unclear, the Court granted the

Plaintiff leave to file a Motion to Amend. Magistrate Judge Roger Cosbey granted the Plaintiff's

request to add claims for unlawful gender discrimination under Title VII, and violation of the

Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*. The Defendants moved for

summary judgment on the Plaintiff's claims [ECF No. 67], and the Plaintiff filed a motion asking

the Court to deny the Defendants' motion for summary judgment [ECF No. 72]. Also before the

Court is the Defendants' Motion to Strike Plaintiff's Memorandum and Statements Contained in

Plaintiff's Affidavit [ECF No. 75].

## PROCEDURAL BACKGROUND

On January 15, 2008, the Plaintiff filed her most recent EEO Complaint of

Discrimination in the Postal Service [ECF No. 3-2], alleging discrimination on the basis of race,

color, and sex, and charging retaliation. In her EEO Complaint, she claimed violations of the FMLA, and linked her Title VII retaliation claim to her blowing the whistle on one of her supervisors. On June 11, 2008, the United States Postal Service issued a detailed Final Agency Decision [ECF No. 3-3], dismissing some of the Plaintiff's claims and concluding that the evidence did not support a finding that the Plaintiff was subjected to discrimination as alleged. The Final Agency Decision notified the Plaintiff of her right to file a civil action.

On August 26, 2008, the Plaintiff filed her Complaint and Jury Demand [ECF No. 1], asserting claims of retaliation under Title VII of the Civil Rights Act of 1964. The Defendants filed an Answer [ECF No. 17] on April 27, 2009. On June 16, the Defendants filed their Motion to Dismiss [ECF No. 23] and a Memorandum of Law in Support [ECF No. 24]. On July 29, the Plaintiff filed a Response [ECF No. 30] along with a Memorandum of Law to Deny Motion to Dismiss and/or in the Alternative Amend the Complaint [ECF No. 31]. On August 19, the Defendants filed a Reply [ECF No. 34].

In its Opinion and Order of March 15, 2010 [ECF No. 36], the Court was "unable to adequately address the issues presented" because the Plaintiff's Complaint was "confusing and far from clear." *Dennis v. Potter*, No. 1:08-CV-198-TLS, 2010 WL 987217, at *1–2 (N.D. Ind. Mar. 15, 2010). The Court noted that counsel for the Plaintiff apparently "cut and pasted substantial portions of the Defendants' Memorandum of Law and made slight alterations here and there to make opposing arguments, but without carefully reviewing and proofreading the resulting statements." *Id.* at *2. The result was that counsel for the Plaintiff at times "actually

ma[de] the Defendants' arguments for them."[1] *Id.* Because the Complaint was unclear, the Court granted the Plaintiff leave to file a motion to amend along with a proposed amended complaint. The Plaintiff did so on March 31, 2010. After briefing, Magistrate Judge Cosbey entered an Opinion and Order [ECF No. 46] on June 25, 2010, granting the Plaintiff's request to add claims for gender discrimination under Title VII, and FMLA claims,[2] but denying the Plaintiff's request to add claims for age discrimination, defamation, and breach of privacy. In her Amended Complaint [ECF No. 47], the Plaintiff alleges Title VII gender discrimination claims, Title VII retaliation claims, and FMLA claims.

On May 6, 2011, the Defendants filed a Motion for Summary Judgment [ECF No. 67], along with a Memorandum of Law in Support [ECF No. 68], requesting summary judgment on all of the Plaintiff's remaining claims. The Defendants argue the Plaintiff fails to make out a *prima facie* case of gender discrimination because she cannot show: 1) that she suffered an adverse employment action; or 2) that she was treated differently from any similarly-situated male employee. The Defendants argue the Plaintiff fails to make out a claim for retaliation under Title VII because she cannot show: 1) that she suffered a materially adverse action; or 2) that any action taken by the Defendants was causally connected to any protected activity. The Defendants further argue that even if the Plaintiff could make out a *prima facie* case of gender discrimination or retaliation under Title VII, the claims would fail because she has not shown that the reasons

---

[1]The content of the Plaintiff's Memorandum of Law in Opposition [ECF No. 73] suggests that the Plaintiff's attorney continued his practice of parroting the Defendants' brief, at times making the Defendants' arguments for them.

[2]Although the Defendants maintained their objection that the Plaintiff lacked standing to bring FMLA claims because the Plaintiff was never denied FMLA leave, the Defendants did not oppose the portion of the Plaintiff's motion to amend that added the FMLA claims.

given by the Defendants for their actions were pretextual. Finally, the Defendants argue the Plaintiff fails to make out a claim for damages under the FMLA because: 1) she failed to give proper notice under the FMLA; and 2) she has shown no compensable injury under the FMLA.

The Plaintiff filed a Motion in Opposition [ECF No. 72] on June 4, along with a Memorandum of Law in Opposition [ECF No. 73], requesting that the Court deny the Defendants' Motion, and arguing in opposition to most of the Defendants' arguments. Instead of replying, the Defendants filed a Motion to Strike Plaintiff's Memorandum in Opposition of Summary Judgment and Statements Contained in Plaintiff's Attached Affidavit [ECF No. 75], along with a Memorandum in Support [ECF No. 76], on June 17. The Defendants argue that the Plaintiff's Memorandum of Law in Opposition should be stricken for failure to comply with the local rules, and in the alternative, that portions of the Memorandum of Law in Opposition based on the Plaintiff's Affidavit should be stricken for failure to comply with Federal Rule of Civil Procedure 56. The Plaintiff filed a Response [ECF No. 79] on July 15, and the Defendants filed a Reply [ECF No. 81] on July 26.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure state that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the

matter, but instead to determine whether there is a genuine issue of material fact. *Anderson,* 477

U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). According

to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the
> assertion by:
> (A) citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations,
> stipulations (including those made for purposes of the motion only), admissions,
> interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a
> genuine dispute, or that an adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c)(1).

Although a bare contention that an issue of fact exists is insufficient to create a factual

dispute, the court must construe all facts in a light most favorable to the nonmoving party, view

all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 492

(7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more

likely true," *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999). *See also Payne

v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary

judgment cannot be used to resolve swearing contests between litigants"). A material fact must

be outcome determinative under the governing law. *Insolia v. Philip Morris Inc.*, 216 F.3d 596,

598–99 (7th Cir. 2000). "Irrelevant or unnecessary facts do not deter summary judgment, even

when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir.

2008).  Under Federal Rule of Civil Procedure 56(c)(4), any affidavit or declaration "used to

support or oppose a motion [for summary judgment] must be made on personal knowledge, set

out facts that would be admissible in evidence, and show that the affiant or declarant is

competent to testify on the matters stated." On a motion for summary judgment, a court must

disregard parts of an affidavit that fail to comply with this rule. *Cooper-Schut v. Visteon Auto.*

*Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir.

1987). The following statements do not comply with the rule and should be disregarded: "(1)

conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving

statements without factual support in the record; (4) inferences or opinions not grounded in

observation or other first-hand experience; and (5) mere speculation or conjecture." *Heltzel v.*

*Dutchmen Mfg., Inc.*, No. 3:06-CV-227, 2007 WL 4556735, at *4 (N.D. Ind. Dec. 20, 2007)

(quotation marks and citations omitted). Although "self-serving statements in affidavits without

factual support in the record carry no weight," *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921,

925 (7th Cir. 2004) (emphasis omitted), "a self-serving affidavit supported by facts in the record

[can] defeat summary judgment," and the record "may include the self-serving affidavit itself,

provided that the affidavit meets the usual requirements for evidence on summary

judgment—including the requirements that it be based on personal knowledge and that it set forth

specific facts showing that there was a genuine issue for trial," *Buie v. Quad/Graphics, Inc.*, 366

F.3d 496, 504 (7th Cir. 2004) (quotation marks and citations omitted).


## STATEMENT OF FACTS

The Court considers the following facts, which are derived from the Defendant's

Statement of Material Facts, designated citations to the various depositions, and the Amended

Complaint. The Plaintiff has indicated agreement with all the facts listed in the Defendants'

Statement of Material Facts, but also indicated disagreement with those facts insofar as they

differ from the Plaintiff's Affidavit. (*See* Pl.'s Mem. of Law in Opp'n 1, ECF No. 73 ("Plaintiff concurs with the Defendant's presentation of the statement of material facts, but also adds the following").) The Court will summarize those facts necessary for a summary judgment determination, construed in a light most favorable to the Plaintiff, and articulated in line with the Court's determination of the Defendants' Motion to Strike.[3] Further, the Court will consider those facts from the Defendants' Statement of Material Facts which are not challenged by the Plaintiff's Affidavit to be undisputed for the purposes of summary judgment. *See* Fed. R. Civ. P. 56(e)(2).

The Plaintiff is a white female. She began her employment with the Defendants in 1999. The Defendants employed the Plaintiff as a Supervisor, Customer Services, at the Fort Wayne, Indiana, Post Office. Her primary duty was to supervise employees in the retail section. Since 1999, she additionally performed job bidding duties, though job bidding duties were extra duties, not reflected in her job description. Her immediate supervisor at all times relevant to this case was Karen Gillig, a white female. Paul Wilson, a black male, supervised the delivery section and also reported directly to Gillig. George Mueller, a male,[4] supervised the customer service support section. Mueller also performed job bidding duties, which were contained in his job description.

### A.     2005 EEO Complaint

On December 17, 2005, the Plaintiff filed an EEO complaint against Defendant Potter

---

[3]The Court addresses the Motion to Strike *infra*, only to the extent necessary to decide the Motion for Summary Judgment.

[4]The record does not indicate Mueller's race or ethnicity, but as the Plaintiff's only *prima facie* Title VII claims are for gender discrimination, it is sufficient to note that he is male.

and other managers for race, color, and sex discrimination. She claimed her plant manager, Walt Hess, made a comment to Gillig that if the Plaintiff discussed a certain job bid with anyone he would "kill her." (Dennis Dep. Ex. 47, ECF No. 68-5 at 35.) The Plaintiff reported the threat when she learned of it, but although Hess was investigated and received some discipline for his unacceptable comment, he was not suspended during the pendency of the investigation, nor was he fired for the incident. The Plaintiff felt this resolution by Defendant Potter and other managers violated the Postal Service's Zero Tolerance Policy concerning threats. Additionally, in an effort to minimize contact between the Plaintiff and Hess, a higher-level manager removed her job bidding duties after the investigation. But when the Plaintiff complained that this was retaliation against her for filing an EEO complaint, her job bidding duties were reestablished. The Postal Service procedurally dismissed Plaintiff's EEO complaint on December 29, 2005. (Am. Compl. Ex. B, ECF No. 47 at 28.)

**B.      2005 and 2006 Whistle Blowing Activity**

In 2005 and 2006, the Plaintiff twice reported Gillig to the Office of the Inspector General (OIG) for workplace violations—first alleging that Gillig was paid for hours she did not work, and second that she issued an unethical instruction to the Plaintiff. In both cases, Gillig was exonerated in the ensuing OIG investigation. In 2006, the Plaintiff reported another supervisor three different times for workplace violations involving dishonesty. After an OIG investigation, that supervisor was fired.

**C.      Background to the Plaintiff's Leave Requests**

In June 2007, the plant manager became upset at the Plaintiff for not immediately following his direction concerning a job posting. He directed an investigation into the Plaintiff's conduct, and considered relieving her of her job bidding duties, but ultimately decided not to reassign job bidding responsibilities. The Plaintiff did not know in June 2007 that she was under investigation. On Friday, August 3, 2007, the Plaintiff learned that she had been investigated in June for unacceptable behavior. The Plaintiff became upset and left work claiming "stress leave." Before departing work, the Plaintiff requested leave from Gillig. Gillig granted the Plaintiff eight hours of sick leave for August 3, 2007. Gillig did not know the reason the Plaintiff was stressed on August 3. This was not the first time the Plaintiff had taken sick leave and indicated that stress was the reason for the leave.

**D.**     **The Plaintiff's August 2007 Leave Requests**

On Monday, August 6, 2007, the Plaintiff called the Integrated Voice Recognition (IVR) call-in system and requested eight hours of sick leave for August 6, 2007. The IVR system has an option for requesting FMLA leave, but the Plaintiff did not request that her August 6 leave be designated FMLA leave. If an employee calling the IVR system requests FMLA leave, the system automatically forwards the employee a packet of information relating to the FMLA. Additionally, once an employee requests FMLA leave, the leave is provisionally designated FMLA leave pending approval by the FMLA coordinator. The IVR call-in system was in place in August 2007, and although not all managers and supervisors used the system at first, the Plaintiff had received mandatory training on using the system in June 2007.

Also on August 6, the Plaintiff went to her doctor's office and obtained a doctor's slip

(apparently signed by a registered nurse) stating: "Please excuse [the Plaintiff] from work until

we see her back in our office on 8/15/07." (Dennis Dep. Ex. 10, ECF No. 68-4 at 8.)  When

Gillig learned of this doctor's slip, she was suspicious about whether the Plaintiff's stress was a

sufficient reason for her missing work, and Gillig wrote the Plaintiff a letter on August 6

requesting further medical documentation concerning her illness. Although the usual practice

was only to request medical documentation when an employee was off work for more than three

days, Gillig was within her rights as a supervisor to request further documentation given her

suspicion that the Plaintiff was not really sick. As to the content required in medical

documentation, the Employee and Labor Relations Manual (ELM) states that:

> When employees are required to submit medical documentation, such
> documentation should be furnished by the employee's attending physician or
> other attending practitioner . . . . The documentation should provide an
> explanation of the nature of the employee's illness or injury sufficient to indicate
> to management that the employee was (or will be) unable to perform his or her
> normal duties for the period of absence. Normally, medical statements such as
> "under my care" or "received treatment" are not acceptable evidence of
> incapacitation to perform duties.

(ELM § 513.364, ECF No. 68-4 at 4.) When the Plaintiff proffered the first doctor's slip, she

made no mention of the FMLA.

    In response to Gillig's letter of August 6, the Plaintiff went back to her doctor's office on

August 7, 2007, and obtained a doctor's slip (also apparently not signed by a doctor) stating:

"[The Plaintiff] has been off work under Dr. Oshaughnessy's care since 8-3-07 she will remain

off due to illness until seen in our office on 8-15-2007 where she will be re-evaluated at that

time." (Dennis Dep. Ex. 12, ECF No. 68-4 at 15.) She hand delivered this doctor's slip—along

with a letter from her attorney—to another supervisor at the Post Office, Dawn Gerardot, on

August 8, 2007. The Plaintiff mentioned nothing to Gerardot about the FMLA or seeking FMLA

10

protection. Gerardot gave the new doctor's slip and the attorney letter to Gillig.

Gillig consulted with a labor relations specialist about the new documentation provided by the Plaintiff. The labor relations specialist instructed Gillig that the Plaintiff's documentation was inadequate in that it still did not state the reason for her absence in accordance with the ELM. Gillig therefore sent another letter to the Plaintiff requesting appropriate documentation. On August 10, Gillig was required to enter the Plaintiff's timesheet for the pay period including August 6–10. Because Gillig had received no additional information from the Plaintiff, Gillig entered the Plaintiff's time for August 6–10 as leave without pay (LWOP).

On August 15, 2007, the Plaintiff's doctor diagnosed her with "benign essential hypertension" and stated that she could return to work on August 20 without restriction. (Dennis Dep. Ex. 14, ECF No. 68-4 at 22.) When Gillig received this documentation, she recorded the Plaintiff's time for the week of August 13–17 as paid sick leave. On August 24, the Plaintiff received a paycheck with no pay for August 6–10 because Gillig had designated that period as LWOP. The Plaintiff requested a pay adjustment due to her August 15 medical documentation. Gillig entered the adjustment for the next pay period, changing the August 6–10 period from LWOP to sick leave. The Plaintiff received her pay for the August 6–10 period on September 7, fourteen days later than she would have received it had it originally been designated sick leave. The Plaintiff could have requested an immediate pay advance, but did not.

FMLA leave is approved by the FMLA coordinator, not the supervisor. The Plaintiff called the FMLA coordinator, Denise Lasley, on September 27, 2007, requesting FMLA protection for her August leave. The Plaintiff submitted the required FMLA documentation to Lasley on or about October 1. The Plaintiff claimed she had requested FMLA paperwork three

times previously by leaving phone messages on Lasley's personal phone. The Plaintiff had not requested FMLA protection from Gillig, or told Gillig she requested it through Lasley, or requested FMLA leave through the IVR call-in system. On or about October 3, 2007, the Plaintiff's August 3–19 absence was approved as FMLA leave.

### E.   Wilson's FMLA Request and Mueller's Job Bidding Duties

In August 2007, Paul Wilson, who also reported directly to Gillig, let her know he was scheduled for surgery. He requested FMLA protection. Lasley certified his leave as FMLA leave, and Gillig did not ask him for additional medical documentation.

When the Plaintiff returned to work in late August 2007, she was informed that she would no longer be performing job bidding duties. This change did not alter the Plaintiff's primary duties or her pay. Gerardot made the decision to assign job bidding duties to George Mueller, whose job description included job bidding, and who had experience with job bidding. Gerardot's decision came because she was instructed that only one person could do the job bidding, and job bidding needed to be listed in the job description of the person who would do it. Job bidding had never been listed in the Plaintiff's job description. Further, because of the migration to a new system, whomever Gerardot chose would have to be retrained in automated job bidding. On September 7, 2007, the Plaintiff filed an OIG complaint under the Whistle Blower Protection Act alleging that removal of her job bidding duties was retaliation for her complaints against Gillig and the other supervisor. The OIG investigated, but concluded that removal of job bidding duties "would have occurred absent [the Plaintiff's] protected communication" to the OIG. (Dennis Dep. Ex. 45, ECF No. 68-5 at 31.)

**F.**      **The Plaintiff's October 2007 Leave Requests**

In October 2007, Gillig informed the Plaintiff she would need to do training in delivery so she could fill in as a supervisor for delivery operations. The Plaintiff told Gillig she did not want to do delivery work. Gillig insisted, and scheduled the Plaintiff for delivery training on October 16, 17, and 18. On October 9, the Plaintiff submitted a leave slip for eight hours annual leave on October 16, which Gillig denied. On October 11, the Plaintiff submitted a leave slip for eight hours sick leave on October 17 because of a doctor's appointment. Gillig denied the request again, but informed the Plaintiff that she could come in early to do the training before the doctor's appointment. From October 15–21, the Plaintiff was absent from work.

The Plaintiff called the IVR system on Sunday, October 14, and requested eight hours of sick leave for October 15. The Plaintiff did not request FMLA protection for October 15. Then on October 15, the Plaintiff again called the IVR system and requested eight hours sick leave for October 16, but did not request FMLA leave. On October 16, the Plaintiff called the IVR system and requested sick leave for October 17–18, and this time did request FMLA protection, but the automatically-generated email received by Gillig did not indicate that the Plaintiff had requested FMLA protection.

On October 19, the Plaintiff's husband delivered a doctor's note dated October 17 which stated: "Pt is to be off work from 10/15/07 to 10/21/07 due to medical problems. Pt may return to work on Monday, 10/22/07." (Dennis Dep. Ex. 23, ECF No. 68-4 at 33.) The Plaintiff provided Gillig no notice on October 19 that she was requesting FMLA protection. Under the circumstances, Gillig was suspicious about whether the Plaintiff was genuinely sick. Gillig

therefore responded to the Plaintiff by letter on October 19, informing her that her medical documentation did "not provide adequate reason" for her "incapacity to work," and directing the Plaintiff to provide proper documentation for her absence. (Dennis Dep. Ex. 24, ECF No. 68-4 at 35.) While making copies of the documents provided by the Plaintiff's husband, Gillig left the original documents on the office copy machine for approximately 30 minutes. Because Gillig received no additional documentation by the end of the pay period, she entered the Plaintiff's time from October 15–19 as LWOP. On October 23, the Plaintiff provided a doctor's note stating that she suffered from "chest pain, migraines, and fatigue." (Gillig Aff. Ex. B, ECF No. 69-5.) Upon receipt of this documentation, Gillig adjusted the Plaintiff's pay during the next pay period, changing the October 15–19 entry from LWOP to sick leave. Again, the Plaintiff was deprived of her pay for two weeks, and did not request an advance.

The Plaintiff submitted a request to Lasley on or about October 26 for FMLA leave for the period from October 15–21. Her FMLA leave request for October 15–21, 2007, was approved on January 8, 2008. (Lasley Aff. ¶ 17, ECF No. 69-6 at 6.)

**G.    The Plaintiff's 2007 Employment Review**

Gillig rated the Plaintiff for fiscal year 2007, which ended September 30, 2007. Gillig assessed the Plaintiff as either a "high contributor" or an "exceptional contributor" in all core requirements except for communication, in which Gillig assessed the Plaintiff as a "contributor." (Dennis Dep. Ex. 32, ECF No. 68-4 at 42–48.) Gillig explained her rating was justified because some of the Plaintiff's subordinates had complained to her that the Plaintiff was not communicating well with them. In spite of the communication rating, the Plaintiff's overall

14

rating was equal to or better than the rating of every other supervisor in the Fort Wayne Post Office, including that of Gillig.

**H.      The Plaintiff's Work Restriction**

In January 2008, the Plaintiff was diagnosed with acute pulmonary histoplasmosis. Her doctor instructed that she could return to work on January 14, but restricted her to eight hour shifts not to exceed forty hours per week through March 2008. (Dennis Dep. Ex. 33, ECF No. 68-4 at 50.) The Plaintiff's job responsibilities included checking in mail carriers when they returned at the end of the day. She complained that when they returned late, she had to work past her eight-hour restriction. Gillig adjusted her hours to begin later, and also instituted a contingency plan to have another supervisor check in late-returning mail carriers. Neither Gerardot nor Gillig instructed the Plaintiff to work beyond her eight hour restriction.

**DISCUSSION**

The Defendants have framed the legal issues before the Court, addressing particular facts which they claim do not rise to the level of Title VII gender discrimination, Title VII retaliation, or FMLA violations. The Plaintiff's responses treat only the factual circumstances raised by the Defendants without arguing that any other facts support the Plaintiff's case. Because the Plaintiff merely responded to the Defendants' framing of the issues by arguing that each of the Defendants' contentions were false, but did not suggest the Defendants' version of the Plaintiff's claims was incorrect, the Court will analyze the Plaintiff's claims as framed by the Defendants.

15

A.      **The Defendants' Motion to Strike**

The Defendants argue that the Plaintiff's Memorandum of Law in Opposition [ECF No. 73] violates Rule 56 of the Local Rules of the United States District Court for the Northern District of Indiana, and that the Memorandum should be stricken in its entirety. *See Bell, Boyd & Lloyd*, 896 F.2d 1101, 1103 (7th Cir. 1990) (upholding district court's decision to grant summary judgment on the basis of a violation of the local rule); *Goltz v. Univ. of Notre Dame du Lac*, 177 F.R.D. 638, 639 (N.D. Ind. 1997) (striking defendant's filing because it was not provided for in the local rules). The Defendants also argue that if the Court does consider the Plaintiff's Memorandum of Law in Opposition, many statements in that Memorandum are inadmissible and therefore not appropriate under Rule 56(c)(4), which states that:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(4). Because the Defendants argue that many of the statements in the Plaintiff's Memorandum are based on statements from the Plaintiff's noncomplying Affidavit , the Defendants ask the Court to strike those statements from the Memorandum.

Although it is clear that in certain respects the Plaintiff's Memorandum violates the local rules,[5] the Court will address the Plaintiff's arguments on the merits, and will not exercise its discretion to strike the Plaintiff's Memorandum in its entirety for substantial noncompliance with

---

[5]The Plaintiff's Memorandum does not include a section labeled "Statement of Genuine Disputes," as required by Local Rule 56-1(b)(2), nor has the Plaintiff clearly "identifie[d] the material facts that the party contends are genuinely disputed so as to make a trial necessary." N.D. Ind. L.R. 56-1(b)(2). Instead, the Plaintiff has concurred with the Defendants' Statement of Material Facts, but also added twenty-one "additional material facts," some of which conflict with the statements of fact with which the Plaintiff has agreed. (Pl.'s Mem. of Law in Opp'n 1, ECF No. 73.)

the local rules.[6] Accordingly, the Defendants' Motion to Strike will be denied in part with respect to the request to strike the Plaintiff's Memorandum in its entirety. Further, many of the factual assertions raised by the Plaintiff are not relevant to the Court's determination on summary judgment. The Court will therefore address the Defendants' Motion to Strike only insofar as necessary to resolve the Motion for Summary Judgment.[7] As stated above, the following statements do not comply with Rule 56 and should be disregarded: "(1) conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture." *Heltzel,* 2007 WL 4556735, at *4. The following statements from the Plaintiff's Memorandum, which are based on the Plaintiff's Affidavit, are not appropriate under Rule 56, and will be stricken.

### 1.   *The Plaintiff's Knowledge of Bultemeier's Awareness*

The Defendants move the Court to strike the Plaintiff's assertion that plant manager Janet Bultemeier "was aware that [the Plaintiff] was constantly subject to discriminatory and retaliatory treatment by Gillig." (Pl.'s Mem. of Law in Opp'n 1–2.) The Defendants point out that the statement is self-serving and conclusory, is in conflict with Bultemeier's deposition

---

[6]To do otherwise would result in further delay in ruling on these motions.

[7]The arguments raised in the Defendants' Motion to Strike but not addressed here by the Court will accordingly be denied as moot. Further, the Defendants raise for the first time in their Reply certain requests to strike specific portions of the Plaintiff's Memorandum of Law in Opposition. The Defendants' requests raised for the first time in the Reply will be denied because the Plaintiff has had no opportunity to respond to them, and because the Court finds that the subjects of the Defendants' new requests are not material because summary judgment is appropriate in favor of the Defendants even without the Court addressing the new arguments in the Defendants' Reply.

testimony where she stated she had no knowledge of the Plaintiff being treated differently from others, and that the Plaintiff gives no basis for her knowledge of Bultemeier's state of mind. The Plaintiff responds that she had many conversations with Bultemeier, and Bultemeier in her deposition acknowledged there was a personality conflict between Gillig and the Plaintiff. The Court agrees with the Defendants that the Plaintiff's conclusory statement about Bultemeier's awareness is not supported in the record in that it appears to conflict with Bultemeier's deposition testimony, and the Plaintiff has not shown that the assertion is based on her personal knowledge. Accordingly, it will be stricken.

### 2.      *The Plaintiff's Knowledge of Gillig's Suspicions*

The Defendants move the Court to strike the Plaintiff's assertion that "there were no suspicions raised to Gillig" when the Plaintiff requested stress leave in August 2007 because the Plaintiff had previously requested stress leave. (Pl.'s Mem. of Law in Opp'n 2.) The Defendants argue the Plaintiff has no knowledge of whether Gillig was or was not suspicious of the stress leave request. The Plaintiff responds that no one approached her with suspicions when she previously requested stress leave, so Gillig must not have been suspicious of her activity in August 2007. The Court agrees with the Defendants that the Plaintiff's assertion is merely speculation with no basis of personal knowledge, and it will be stricken.

### 3.      *The Connection Between the Plaintiff's Whistle Blower Activity and Alleged EEOC Discrimination and Retaliation*

The Defendants move the Court to strike the Plaintiff's assertion that "[t]he whistle blower activity Plaintiff engaged in was based upon the EEOC discrimination and retaliation."

(Pl.'s Mem. of Law in Opp'n 2.) The Defendants argue this assertion is merely a conclusory allegation without support in the record. The Plaintiff gives an undeveloped response that she has adequately explained the connection between her whistle blowing and her allegations of discrimination. The Court finds that the connection is far from clear, and that this assertion is conclusory and not supported by facts in the record. Accordingly, the motion to strike this assertion from the Plaintiff's statement of material facts will be granted.

**4.      *The Change in the Plaintiff's Duties***

The Defendants move the Court to strike the Plaintiff's assertion, concerning her mandatory training in delivery in October 2007, that "[s]cheduling Plaintiff to perform these duties in October, 2007 was an adverse action because under the ELMs, such action is an involuntary reassignment because Plaintiff had performed her job duties for over ten (10) years (doing retail only)." (Pl.'s Mem. of Law in Opp'n 3.) The Defendants argue the Plaintiff is stating a legal conclusion that this change in duties constituted an adverse employment action. The Plaintiff responds with more legal argument as to why this constituted a materially adverse change. The Court finds that the Plaintiff's legal argument is not appropriate as a statement of material fact, and accordingly the assertion will be stricken.

**5.      *Proper FMLA Procedures***

The Defendant moves the Court to strike the Plaintiff's assertion that Gillig should have checked the Plaintiff's information after receiving the automatically-generated email on October 16, 2007, and that "[i]f Gillig had properly done so there would be no FMLA issue." (Pl.'s Mem.

of Law in Opp'n 4.) The Defendant argues the Plaintiff has no personal knowledge of what Gillig would have done if she had taken a certain action. The Plaintiff responds that checking her information was the proper procedure, and Gillig should have done so on October 16. The Defendants respond that the Plaintiff is merely stating a conclusion. The Court finds that the Defendants are missing the point of the Plaintiff's assertion. It appears that the Plaintiff is not attempting primarily to state the legal conclusion that there would be no FMLA issue if Gillig had acted in a certain way. The Plaintiff, rather, is claiming there is a material issue of fact as to whether Gillig followed the proper procedure, but does so with no citation to facts in the record. The Court finds, therefore, that the Plaintiff's self-serving assertion is not supported by the record, which otherwise indicates supervisors did not approve FMLA leave requests, nor did they involve themselves in the FMLA procedures where the FMLA was not clearly implicated in the employee's leave request or where the employee provided no notice that FMLA leave was being requested. Accordingly, the Plaintiff's assertion that Gillig failed to follow proper procedures will be stricken.

### 6.    *Support for the Plaintiff's 2007 Rating by Gillig*

The Defendants move the Court to strike the Plaintiff's assertion that "there were no documents or indications" supporting the Plaintiff's 2007 "communicator" rating from Gillig. (Pl.'s Mem. of Law in Opp'n 4.) The Defendants argue Gillig testified in her deposition to several indications why she rated the Plaintiff as she did. The Plaintiff's response is largely non-responsive, and actually admits that the Plaintiff's assertion "does not comply with Rule 56." (Pl.'s Resp. to Defs.' Mot. to Strike 3, ECF No. 79.) The Court finds the Plaintiff's assertion that

Gillig had no reasons for her rating to be self-serving and not supported by the record. Accordingly, it will be stricken.

**B.       Title VII Gender Discrimination**

Title VII makes it unlawful for an employer to discharge or discipline an employee because of that person's sex. 42 U.S.C. § 2000e–2(a)(1). A plaintiff may prove discrimination under Title VII either directly or indirectly under the burden-shifting method identified in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 733 (7th Cir. 2011) (discussing direct and indirect methods under Title VII).

As the Plaintiff states she is using the indirect method, the Court will analyze only that method. Under the indirect method, the plaintiff carries the initial burden under the statute of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case of discrimination a plaintiff must offer evidence that: "(1) she is a member of a protected class; (2) her performance met the employer's legitimate expectations; (3) . . .  she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside of the protected class more favorably." *Eaton v. Ind. Dep't of Corrs.*, 657 F.3d 551, 554 (7th Cir. 2011) (quoting  *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007); *see Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750–51 (7th Cir. 2006). A plaintiff's failure to establish even one element of a *prima facie* case warrants summary judgment for the defendant. *Traylor v. Brown*, 295 F.3d 783, 790 (7th Cir. 2002).

The Defendant does not dispute that the Plaintiff meets the first and second prongs of a *prima facie* case of gender discrimination. But the Court finds that she has not shown that she

suffered an adverse employment action, nor has she shown that the Defendants treated similarly-situated male employees more favorably. Accordingly, summary judgment will be entered in favor of the Defendants on the claim of gender discrimination.

### 1.      *Adverse Employment Action*

An adverse employment action under Title VII "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "At minimum, the employee must be able to show a quantitative or qualitative change in the terms or conditions of employment." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). "[M]ere unhappiness and inconvenience are not actionable under Title VII." *Id.*; *Collins v. Village of Woodridge*, 96 F. Supp. 2d 744, 752 (N.D. Ill. 2000) ("the Seventh Circuit has repeatedly made it clear that 'not everything that makes an employee unhappy is an actionable adverse action'") (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)). Further, "an alteration of job responsibilities" does not by itself constitute an adverse employment action. *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510–11 (7th Cir. 1999) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). Finally, "[a]n employee's unhappiness with her employer's conduct or decision is insufficient to support a claim under Title VII." *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008).

The Plaintiff claims that three of the Defendants' actions were adverse employment actions. First, she claims that the Defendants' decision to take job bidding responsibilities away

from her and give them to Mueller was an adverse employment action. Second, she claims that

Gillig's requirement that she submit additional medical documentation before counting her leave

as sick leave was an adverse employment action. Third, she claims that being deprived of one

week of pay for one pay period on two occasions constituted an adverse employment action.

Because none of these actions rise to the level of an adverse employment action under Title VII,

the Plaintiff has failed to satisfy the third prong of a *prima facie* case of gender discrimination.

An alteration in job duties alone is not sufficient to constitute an adverse employment

action. *See Ribando*, 200 F.3d at 510–11. The Plaintiff argues that taking the job bidding duties

away from her was an adverse employment action because her supervisory core functions and

primary duties were changed by the reassignment. But the Plaintiff cites no support in the record

for this assertion, which conflicts with the facts before the Court. As the Defendants note, the

"Plaintiff's supervisory core functions and primary duties were not changed by the reassignment,

and Plaintiff continued to receive her same pay." (Mem. of Law. Supp. Mot. Summ. J. 14, ECF

No. 68.) The job bidding responsibilities were extra duties not included in her job description

and the change in duties did not alter her primary duties. Although the change clearly made her

unhappy, such an alteration of job responsibilities not affecting her pay or her primary duties is

not sufficient to constitute an adverse employment action under Title VII.[8]

---

[8]The Plaintiff's brief also includes an unsupported assertion, with no citation to the record, that
her pay was withheld "when there was no need or basis to do so." The Court assumes the Plaintiff is
referring to the two pay periods when she had to wait for one week of pay. The Court will address that
argument below. Furthermore, the Plaintiff argues she suffered an adverse employment action based on
*Routes v. Henderson*, 58 F. Supp. 2d 959 (S.D. Ind. 1999). But the Plaintiff provides no pinpoint citation
to that forty-page opinion, nor any argument as to why her case is similar to *Routes*. The Court finds
*Routes* distinguishable in that the supervisor in *Routes* displayed a clear "discriminatory animus" against
the employee who took leave. *Routes*, 58 F. Supp. 2d at 982. In contrast, the record indicates Gerardot
made the decision to give job bidding duties to Mueller alone because of an instruction to give the duties
to only one employee—an employee with job bidding duties listed in the job description. It is undisputed

Further, the Plaintiff argues that Gillig's demands for additional medical documentation constituted an adverse employment action. The Plaintiff appears to be arguing that because she had requested leave for stress in the past, her request was not unusual, and should have been granted without a requirement to submit additional documentation. Further, the Plaintiff offers an unsupported assertion that the October training never happened. These disputes are beside the point. Because the Plaintiff has not shown that she suffered any significant change in her employment status, nor any kind of quantitative or qualitative change in the terms or conditions of employment, she has not shown that the requirement to provide additional medical documentation constituted a materially adverse employment action under Title VII—regardless of Gillig's reason for making the request. Moreover, even if the reason for Gillig's request were relevant, the Court finds that the Plaintiff has not presented evidence from which a reasonable jury could conclude that her request was based on gender animus. The Plaintiff's vague request for stress leave, her repeated attempts to get out of the October training beforehand, and the failure of the Plaintiff's initial doctor's slips to meet the specificity requirements in the ELM, render Gillig's requests for more documentation nothing more than proper administration of the leave policies.

The Plaintiff states she has articulated how she suffered financial harm when her paychecks were delayed because of Gillig's demands for documentation. But the Plaintiff nowhere states the nature of this harm. Especially in light of her ability to request a pay advance and failure to do so, the Court finds that a two week delay in payment for one week of pay on two occasions did not quantitatively or qualitatively change the terms or conditions of the

---

that job bidding was listed in Mueller's job description but not in the Plaintiff's job description.

Plaintiff's employment, nor did it significantly change her employment status. Thus, the Plaintiff has not shown a materially adverse employment action required to make out a *prima facie* case of gender discrimination under Title VII.

2.      ***Similarly Situated Employees Outside the Protected Class***

The Plaintiff also fails to show that any similarly-situated male was treated differently for purposes of Title VII. To determine whether another employee is similarly-situated, courts look to "all relevant factors, the number of which depends on the context." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). "To meet [the] burden of demonstrating that another employee is similarly situated, a plaintiff must demonstrate that there is someone who is directly comparable to him in all material respects." *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002). Some of the factors courts consider include whether the employees "1) had the same job description; 2) were subject to the same standards; 3) were subject to the same supervisor; and 4) had comparable experience, education, and other qualifications." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 791 (7th Cir. 2007). Another factor to consider is whether the two employees "had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) (quoting *Radue*, 219 F.3d at 617–18). The Plaintiff claims, first, that Mueller was similarly-situated to her when he was given job bidding duties and they were taken from her. Secondly, she claims that Wilson was similarly-situated to her when he was not required to submit additional medical documentation and was granted FMLA protection for his leave.

25

The Court finds that Mueller and Wilson were not similarly-situated to the Plaintiff.[9] Concerning Mueller, the Plaintiff in her brief admits that "[t]he new consolidated and automated job bidding responsibility required that one person perform the duties and job bidding had to be contained in the core functions of his/her job description." (Pl.'s Mem. of Law in Opp'n 7.) It is undisputed that job bidding duties were part of Mueller's job description and not part of the Plaintiff's job description.  Looking to the relevant factors, the Court finds Mueller is not directly comparable to the Plaintiff and therefore he is not similarly situated. Job description is one of the factors articulated by the Seventh Circuit, *see Boumehdi*, 489 F.3d at 791, and because of the directive Gerardot had received it is particularly relevant in this case. Mueller's different job description makes him not similarly situated to the Plaintiff for purposes of a Title VII analysis.

Looking to the relevant factors, Wilson was also not similarly situated to the Plaintiff. As the Plaintiff admits in her brief, "Wilson requested scheduled leave and informed Gillig in advance of his intent to use paid sick leave for his surgery, and seek FMLA protection. He was proactive and followed all proper procedures in his requests." (Pl.'s Mem. of Law in Opp'n 7.) The Plaintiff also admits that "Plaintiff did not inform Gillig or Gerardot that she intended to seek FMLA protection, when she had every opportunity to do so."[10] (*Id.*) Based on the facts

---

[9]The Defendants note that the Plaintiff testified in her deposition that other males and a female were also treated differently, but that in fact these other individuals were "not comparable in their jobs or supervisors." (Mem. of Law Supp. Mot. Summ. J. 15 n.21.) Because the Plaintiff in her brief did not contest the Defendants' claim or argue that any other individuals besides Mueller and Wilson were similarly situated to the Plaintiff, the Court again accepts the Defendants' formulation.

[10]The Plaintiff continues by admitting that "Plaintiff had no reasonable explanation as to why she did not make her intentions for FMLA protection known in her letters to Gillig and during her face-to-face encounters with Gillig and Gerardot." (Pl.'s Mem. of Law in Opp'n 7.)

before the Court, Wilson was not similarly situated to the Plaintiff. He made his request for leave known in advance and was approved beforehand. He notified his supervisor that he was requesting FMLA protections. He followed normal procedures and his leave was approved accordingly with no need for additional documentation. The Plaintiff, by contrast, notified her supervisor at the last minute, gave no notice of any intent to seek FMLA protection, and gave doctor's slips which inadequately explained the reasons for her absence. The Plaintiff attempts to argue that she did not know she would need leave beforehand so she could not have provided notice before the absence. But that is not the essence of the difference between Wilson and the Plaintiff. Once Wilson knew he would need to be absent, he provided sufficient medical reasons for his absence and FMLA notice. Once the Plaintiff knew she would need to be absent, she provided insufficient medical reasons and no FMLA notice. Under the circumstances, Gillig asked the Plaintiff for more information and did not ask Wilson for more information. The Court must look to the "differentiating or mitigating circumstances" which distinguish Wilson's conduct from the Plaintiff's conduct and which explain the difference in their treatment. *Humphries*, 474 F.3d at 405. Considering the relevant factors in context, the Court finds that Wilson was not similarly situated to the Plaintiff for purposes of a Title VII analysis. Accordingly, the Plaintiff has also failed to meet the fourth prong of the indirect method for showing unlawful gender discrimination under Title VII.

Because the Plaintiff fails to show that she was the subject of an adverse employment action, or that similarly-situated males were treated more favorably, her claim of gender discrimination under Title VII fails, and summary judgment will be entered in favor of the Defendants on this claim.

### C.      Title VII Retaliation

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). When asserting a charge of retaliation under Title VII, a plaintiff may proceed under the direct or indirect method of proof. *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). Under the direct method of proving retaliation, a plaintiff must present either direct or circumstantial evidence showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action taken by the employer; and (3) a causal connection exists between the protected activity and the adverse action. *Barton v. Zimmer*, 662 F.3d 448, 455 (7th Cir. 2011); *Humphries*, 474 F.3d at 404. "A plaintiff can . . . prevail under the direct method of proof by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quotation marks omitted). Under the indirect, burden-shifting method, a plaintiff establishes a *prima facie* case of retaliation by presenting evidence that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; (3) he was meeting his employer's legitimate expectations; and (4) he was treated less favorably than a similarly situated employee who did not engage in statutorily protected activity. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838 (7th Cir. 2009); *Stephens*, 569 F.3d at 786.

If the plaintiff succeeds in passing this initial hurdle, the burden shifts to the defendant to demonstrate a nondiscriminatory reason for its action. *Scruggs*, 587 F.3d at 838; *Stephens*, 569 F.3d at 787. If the defendant does so, the plaintiff can avoid the entry of summary judgment against it by showing that a genuine issue of material fact exists as to whether the defendant's proffered reason was pretextual. *Scruggs*, 587 F.3d at 838 (citing *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008)). Under either the direct or burden-shifting approach, the Plaintiff must demonstrate that she suffered a "materially adverse" action. *See Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 848–49 (7th Cir. 2007).

Here, the Plaintiff appears to rely on the direct method of proof, but fails to show that she suffered a materially adverse action, or that there was any causal connection between her statutorily protected activity and actions taken by the Defendants. Accordingly, summary judgment will be entered in favor of the Defendants on the claim of Title VII retaliation.

1.      ***Materially Adverse Action***

"Materially adverse actions" for purposes of Title VII retaliation claims are those that are severe enough to dissuade a reasonable employee from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67–68 (2006); *see also Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 868 (2011); *Barton*, 662 F.3d at 456 (noting that while the "standard for a materially adverse action sufficient for a retaliation claim is somewhat more forgiving than for a discrimination claim, . . . the action must be severe enough to dissuade a reasonable employee from exercising statutory rights") (citing *Lapka v. Chertoff*, 517 F.3d 974, 985–86 (7th Cir. 2008)). "Material adversity" separates significant from trivial

harms, *Burlington N.*, 548 U.S. at 68, because "not everything that makes an employee unhappy is an actionable adverse action," *Oest v. Ill. Dep't of Corrs.*, 240 F.3d 605, 613 (7th Cir. 2001) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)); *see also Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 661 (7th Cir. 2005) ("life's little reverses are not causes of litigation").

The Plaintiff claims that six of the Defendants' actions were materially adverse actions against her in retaliation for her Title VII protected activity. First, she claims that being deprived of one week of pay for one pay period on two occasions and being required to submit additional medical documentation constituted a materially adverse action. Second, she claims that the Defendants' decision to take job bidding responsibilities away from her and give them to Mueller was a materially adverse action. Third, she claims that the "communicator" employment rating she received from Gillig in 2007 constituted a materially adverse action. Fourth, she claims that she was required to work more than eight hours a day which constituted a materially adverse action. Fifth, she claims that Gillig leaving her medical documents on the copy machine for approximately thirty minutes was a materially adverse action. And sixth, she claims that the June 2007 investigation into her alleged insubordination was a materially adverse action. Because none of these actions rise to the level of a materially adverse action under Title VII, the Plaintiff has failed to satisfy the third prong of a *prima facie* case of Title VII retaliation.

The Court has already found that the Plaintiff's first claim of materially adverse action does not constitute an adverse employment action for purposes of a *prima facie* case of gender discrimination. Keeping in mind the Supreme Court's admonition to "separate significant from trivial harms," *Burlington N.*, 548 U.S. at 68, the Court finds that the requirement to submit

additional medical documentation and the delay of one pay period to receive one week of pay on two occasions also do not constitute harms significant enough to rise to the level of materially adverse actions. The Plaintiff has not articulated any harm she suffered from the delayed arrival of her pay. Although inconvenient for the Plaintiff, the Court finds that having to submit appropriate documentation and having to wait one pay period to be paid for one week of pay on two occasions would not dissuade a reasonable employee from engaging in Title VII protected activity.

The Court has also already held that the Plaintiff's second claim of materially adverse action—for the removal of her job bidding duties—does not constitute an adverse employment action for the purposes of making out a *prima facie* case of gender discrimination. The Seventh Circuit has stated that employment transfers that do not "hurt the pocketbook . . . normally are not adverse employment actions." *Washington*, 420 F.3d at 661 (quotation marks omitted). Thus, a transfer "that does not affect pay (or significantly affect working conditions) cannot be called discriminatory." *Id.* In her brief, the Plaintiff asserts that her "pay, core functional duties, and primary duties were changed by the reassignment," (Pl.'s Mem. of Law in Opp'n 10), but no evidence in the record supports those assertions. Apparently the Plaintiff only means that she had been performing job bidding duties for more than ten years, so removing those duties must have been a retaliatory employment action. Nevertheless, the record indicates that the Plaintiff's pay and working conditions remained the same. The Court therefore finds that the removal of job bidding duties from the Plaintiff, while certainly the type of employment action that "may cause upset," *id.*, did not change her rate of pay or hurt her pocketbook. The Court finds, further, that removal of job bidding duties under the circumstances presented would not dissuade a

reasonable employee from engaging in activities protected by Title VII, and thus is not a materially adverse action for the purposes of Title VII.

The Plaintiff's third claimed materially adverse action is that Gillig rated her as a "contributor" on her 2007 evaluation as a form of reprisal. The record indicates that the Plaintiff's 2007 evaluation was higher than Gillig's 2007 evaluation. The record also indicates that the Plaintiff's overall score for 2007 was the same as her score in 2006. The Plaintiff admits that overall, when compared to other employees, she received "one of the highest ratings," but argues that because of her "contributor" rating she was deprived of a $937 bonus. (Pl.'s Mem. of Law in Opp'n 10.) The Plaintiff also admits that "bonuses are based on the employee's overall rating comprised of all elements." (*Id.*) The Plaintiff has pointed the Court to no evidence that she received the discretionary bonus in the past. She therefore fails to submit evidence upon which the Court could determine whether denial of a bonus would reasonably dissuade her from engaging in protected activity. Furthermore, she admits that bonuses are determined based on the overall rating, and the record indicates that the Plaintiff's overall rating was the same in 2007 as in 2006. This suggests that any action taken by Gillig on the Plaintiff's evaluation was not materially adverse. Even if she established that she was denied a discretionary bonus, "[t]he denial of one discretionary bonus . . . is . . . not sufficient to dissuade a reasonable employee from engaging in protected activity and therefore cannot support [a] retaliation claim." *Palermo v. Clinton*, 437 Fed. Appx. 508, 511 (7th Cir. 2011). Furthermore, "a few mild comments with constructive criticism in an otherwise positive performance evaluation" do not amount to a materially adverse action. *Id.* Therefore, the Court finds that the Plaintiff—with an employment evaluation equal to or better than any other supervisor in the Fort Wayne Post Office and no

worse than her previous evaluation—did not receive the kind of employment evaluation in 2007 that would dissuade a reasonable employee from engaging in protected activity. Gillig's 2007 rating of the Plaintiff as "Communicator" does not constitute a materially adverse action.

The Plaintiff's fourth claim of materially adverse action—that she was required to work more than eight hours per day—is not supported by the facts before the Court. The record indicates that when the Plaintiff's eight hour per day restriction began, the Plaintiff complained about her late hours, and Gillig responded by allowing her to begin later in the day, and by instituting a contingency plan for another employee to complete the close-out duties. The record also indicates neither Gerardot nor Gillig ever instructed the Plaintiff to work outside her restriction. The Plaintiff appears to admit she worked the hours she did "by her own choice," (Pl.'s Mem. of Law in Opp'n 10), but argues she did this out of fear of termination. The Plaintiff asks the Court to review Wilson's deposition, though the Plaintiff does not indicate what assertion or argument the review of Wilson's deposition will support. From the Court's review of his deposition, it appears Wilson did not know what other supervisor would have been available to close out the retail section at the end of the day besides the Plaintiff. But Wilson's deposition also indicates that he worked in the delivery section and was never on duty during the close out at the end of the day, and thus neither had knowledge of close out procedures, nor knew the operations of the retail section. The Court finds the Plaintiff has not shown that there is a genuine issue of material fact about the Plaintiff's work schedule. The record indicates the Plaintiff chose to work the hours she worked. Accordingly, the Plaintiff has not shown that she was required to work outside her work restriction at all, so any hours the Plaintiff worked outside her restriction were not the result of a materially adverse action by the Defendants.

33

The Plaintiff's fifth and sixth claims of materially adverse actions—that her personal medical records were left on the copier for approximately 30 minutes, and that she was the subject of an investigation for insubordination—also do not rise to the level of materially adverse actions. The Plaintiff appears to acknowledge this, as she states: "Plaintiff's claim of reprisal for having her medical records publicly displayed on an office copier for 30 minutes and being investigated for insubordination in June of 2007 also do not show adverse employment actions." (Pl.'s Mem. of Law in Opp'n 11.) Nevertheless, the Plaintiff attempts to argue that the copy machine incident was defamation. Due to the Plaintiff's failure to address the Defendants' sovereign immunity to intentional tort suits, however, the defamation claim was denied by Magistrate Judge Cosbey and is not before the Court. (Opinion & Order 7–8, ECF No. 46.) The Plaintiff then argues that these incidents were "annoying or embarrassing" to her, and "lowered her esteem in the community." (Pl.'s Mem. of Law in Opp'n 11.) The Defendants point out that nothing came of the investigation. Bearing in mind once again the Supreme Court's mandate that courts must "separate significant from trivial harms," *Burlington N.*, 548 U.S. at 68, the Court finds that the Plaintiff's claims do not rise to the level of significant for purposes of Title VII retaliation. *See Washington*, 420 F.3d at 661 ("life's little reverses are not causes of litigation"). As the Seventh Circuit has stated, "mere unhappiness and inconvenience are not actionable under Title VII." *Haywood*, 323 F.3d at 532. Neither the Plaintiff's claim that her medical information was left on the copy machine for 30 minutes nor her claim that she was investigated for insubordination would dissuade a reasonable employee from engaging in Title VII protected activity, and therefore neither claim constitutes a materially adverse action under Title VII.

2.      *Causal Connection Between Protected Activity and Actions by the Defendants*

The Plaintiff has also failed to show a causal link between her Title VII protected activity and any actions by the Defendants. The Plaintiff claims the Defendants retaliated against her because of her whistle blowing activities, and because of her 2005 EEO complaint. As whistle blowing is not protected activity under Title VII, and the Plaintiff has failed to show a causal connection between her 2005 EEO complaint and the Defendants' actions in 2007 and 2008, the Plaintiff has failed to satisfy the third prong of a Title VII retaliation claim under the direct method of proof.

The Plaintiff claims the Defendants retaliated against her because of her whistle blowing activity and later whistle blowing reprisal claim. This activity does not fall under Title VII, however. Under Title VII, it is an unlawful employment practice to discriminate against any employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "Title VII prohibits discrimination against employees who oppose unlawful employment practices or participate in any charge or investigation *under the Act*." *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi.*, 104 F.3d 1004, 1014 (7th Cir. 1997) (emphasis added). Thus, a plaintiff must allege that she "opposed some conduct forbidden by Title VII." *Broadwater v. Heidtman Steel Prods., Inc.*, No. 00-CV-0992-MJR, 2001 WL 498110, at *3–4 (S.D. Ill. Apr. 11, 2001) ("[The plaintiff] alleges that he was fired for his whistle-blowing, and that this violated Title VII's prohibition against retaliation. Unfortunately, [the plaintiff] has not stated a claim for *Title VII* retaliation."); *Bartz v. Mitchell Ctr.*, No. A-05-CA-959 LY, 2008 WL 577388, at *3

35

(W.D. Tex. Jan. 23, 2008) ("whistle blowing . . . is not activity protected by Title VII")
(collecting cases). The Plaintiff argues that her whistle blowing did involve practices prohibited
by Title VII, but offers no support for that assertion. The record indicates the Plaintiff reported
supervisors for improperly reporting hours and for giving an instruction that the Plaintiff
perceived to require her to act dishonestly, not for violations of Title VII. Because the Plaintiff's
claim that the Defendants retaliated against her based on her whistle blowing and her later
whistle blowing reprisal claim is not based on the Plaintiff's opposition to any activity made
unlawful by Title VII, the Plaintiff's claim of retaliation under Title VII—at least as far as it is
based on her whistle blowing activities—must fail.

  The Plaintiff also claims the Defendant retaliated against her because of her December
2005 EEO complaint. The Plaintiff's 2005 EEO complaint is certainly protected activity under
Title VII. However, the Plaintiff has not shown how the 2005 EEO complaint is causally
connected to the Defendants' August 2007, October 2007, and 2008 actions that the Plaintiff
alleges were retaliatory. The temporal proximity of an adverse employment action by the
employer and the Title VII protected activity by the employee must be "very close" to establish
causality. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quoting *O'Neal v.
Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001), and noting that a twenty month
separation between protected activity and adverse employment action "suggests . . . no causality
at all"); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir. 1992) (absent further evidence,
four months between filing of complaint and receipt of a disciplinary letter did not "sufficiently
raise the inference that [the plaintiff's] filing was the reason for the adverse action"). The
Defendants point out that the 2005 EEO complaint does not name either Gillig or Gerardot—the

two managers the Plaintiff claims were most involved with the retaliatory actions against her in 2007 and 2008. The Plaintiff acknowledges that Gillig and Gerardot were not named as parties to her 2005 complaint, but then argues, without explanation, that "[t]heir actions or inactions provide the needed nexus in this case." (Pl.'s Mem. of Law in Opp'n 73.) The Plaintiff then argues, in apparent contradiction to the facts before the Court, that "the EEO Complaint was filed and the adverse actions commenced immediately thereafter" and that "the persons administering the discrimination and retaliation are the ones she reported out" in 2005. (*Id.*) The record suggests just the opposite—that more than twenty months passed between the Plaintiff's EEO complaint and the first action she claims was retaliatory, and that the managers involved in the 2007 and 2008 actions by the Defendants were not named in the 2005 complaint. Because the Plaintiff has presented no evidence to show a causal connection between her protected activity and any allegedly adverse actions by the Defendants, she has failed to satisfy the causal connection required to make out a claim of retaliation under Title VII.

The Plaintiff's Title VII retaliation claim fails because the Defendants' actions do not rise to the level of materially adverse actions under Title VII, because her whistle blowing activity is not protected activity under Title VII, and because she has failed to show a causal connection between her 2005 EEO complaint and any actions of the Defendants. Accordingly, summary judgment will be entered in favor of the Defendants on this claim.

### D.     Pretext Analysis

Even if the Plaintiff had been able to establish a *prima facie* case of discrimination or retaliation, her claims could not proceed to trial. The Defendants have offered nondiscriminatory

37

reasons for their actions with respect to the Plaintiff. Therefore, to survive summary judgment, the Plaintiff "must show that a genuine issue of material fact exists as to whether the [Defendants'] proffered reason was pretextual." *Scruggs*, 587 F.3d at 838. Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). To demonstrate pretext, the Plaintiff must show that the Defendants did not honestly believe the reasons given for their actions. *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 478–79 (7th Cir. 2010). "An employer's justification may be considered pretextual where the plaintiff demonstrates that it had no basis in fact, it did not actually motivate the decision . . . or it was insufficient to motivate that decision." *Radentz v. Marion Cnty.*, 640 F.3d 754, 757 (7th Cir. 2011); *see also Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (explaining that for the plaintiff to show that the employer's reasons were not credible, he had to point to evidence that they were not the real reasons, were not grounded in fact, or were insufficient to warrant the adverse decision). "The focus for the court is not whether the defendants' decision was a wise one, but whether it was honestly believed. If a reasonable factfinder would be compelled to believe the defendants' explanation, then the defendants are entitled to summary judgment." *Radentz*, 640 F.3d at 757 (quotation marks and brackets omitted) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008)).

The Plaintiff has not shown that the reasons given by the Defendants for their actions were pretextual. On the contrary, the Plaintiff admits nearly every rationale provided by the Defendants. The Defendants argue the reason Gillig required additional medical documentation from the Plaintiff was that she was suspicious about the Plaintiff's request for stress leave, and the Plaintiff's medical documentation did not meet the standards required in the ELM. The

Plaintiff argues there was a "three-day rule" providing that supervisors would automatically grant leave as FMLA leave once the employee was gone for more than three days, implicitly arguing that Gillig should not have questioned her leave at all before three days had elapsed. But the Defendants note that the consistent testimony in depositions revealed that the three-day rule was not a hard and fast policy. The Plaintiff agrees, stating that "four other managers and supervisors testified that the supervisor had discretion to request documentation after one day and could request medical documentation even if employees made an FMLA request." (Pl.'s Mem. of Law in Opp'n 13.) The record indicates that the Plaintiff never made a request for FMLA leave to Gillig, and that a supervisor was under no obligation to treat leave as FMLA leave when it did not appear to be warranted and the employee had not requested it. The Plaintiff herself admitted in her deposition that a supervisor was within her rights to demand medical documentation after one day of an absence. The Plaintiff also admits that Gillig found her medical documentation to be "inadequate," and admits that for this reason the Plaintiff "was placed on leave without pay until adequate documentation was provided." (*Id.* 14.) In sum, the Plaintiff has failed to show that Gillig's demand for further medical documentation, and the resulting delay in the Plaintiff's pay, was anything other than the proper implementation of the Defendants' leave policies.

The Defendants argue the Plaintiff was relieved of her job bidding duties because such duties were listed in Mueller's job description and they were not listed in the Plaintiff's job description. Gerardot stated in her deposition that she received instructions to give job bidding duties to one employee, and that job bidding had to be included in that employee's job description. The Plaintiff admits that "the Postal Service had a legitimate business reason for

39

reassigning the job bidding duties." (*Id.*) She further admits that Gerardot made the change because she was instructed to do so, and that "[b]ecause job bidding was in Mueller's job description and not Plaintiff's job description, Mueller was assigned the tasks." (*Id.*) The Plaintiff again fails to show that the reasons given by the Defendants for their actions were pretextual.

Finally, the Defendants argue the reason for the Plaintiff's 2007 rating of "contributor" in the communication category was her lack of communication, both to Gillig, and to other employees. The Defendants also point out that Gillig did not rate the Plaintiff the previous year, so Gillig could not have changed a final rating with respect to the Plaintiff. The Plaintiff appears to agree with the Defendants, noting that her own retaliation claim for the 2007 evaluation "is a non-starter, because Gillig did not rate Plaintiff in 2006." (*Id.*) The Plaintiff also admits that she refused to communicate effectively with Gillig. She argues the Defendants have not produced the complaints that Gillig says she received from the Plaintiff's subordinates before the evaluation. But the Plaintiff produces nothing to show that this omission represents deliberate deception or that the reports did not exist as a basis for the contributor rating. The facts before the Court indicate that the Plaintiff's 2007 communication rating had to do with her communication; the Plaintiff fails to show that it was pretextual.

Because the Plaintiff has not shown that the reasons given by the Defendants for their actions were pretextual,[11] the Plaintiff's claims of gender discrimination and retaliation under

---

[11]Neither party addresses whether the reasons given by the Defendants for the Plaintiff's work schedule in light of her eight-hour restriction, the Plaintiff's documents being left on the copy machine, and the June 2007 investigation of the Plaintiff were pretextual. Because the Plaintiff has not shown the Defendants' actions to be anything other than legitimate, the Court finds that the Plaintiff's assertion of claims arising from these incidents would also fail under a pretext analysis.

Title VII would fail even if the Plaintiff could make out *prima facie* claims of discrimination or retaliation.

**E.      FMLA Claims**

Although the Plaintiff was never denied FMLA leave, she claims violations of her rights under the FMLA when she was temporarily denied pay and required to submit adequate medical documentation to Gillig, when she was not automatically given "FMLA paperwork," when she was not automatically given FMLA protection after three days of absence, and when Gillig left her medical documentation on the copy machine for approximately thirty minutes. Because the record shows the Plaintiff did not give adequate FMLA notice and cannot articulate any damages under the FMLA, the Defendants' request for summary judgment on the Plaintiff's FMLA claims will be granted.

As the Seventh Circuit has stated, "[t]he FMLA makes available to eligible employees up to twelve weeks of leave during any twelve-month period for . . . the inability of the employee himself to perform the functions of his position because of a serious health condition." *Harrell v. U.S. Postal Serv.*, 445 F.3d 913, 919 (7th Cir. 2006); 29 U.S.C. § 2612(a)(1). "At the conclusion of a qualified-leave period, the employee is entitled to return to his former position of employment, or to an equivalent one, with the same terms and benefits." *Harrell*, 445 F.3d at 919; 29 U.S.C. § 2614(a)(1). To ensure compliance, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). Finally, to substantiate an FMLA violation:

the employee must prove that: (1) he was eligible for FMLA protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take FMLA leave; and (5) his employer denied him FMLA benefits to which he was entitled.

*Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011) (citing *Brown v. Auto. Components Holdings, LLC*, 622 F.3d 685, 689 (7th Cir. 2010)).

The Plaintiff claims FMLA violations because she was required to submit additional medical documentation, was not automatically given "FMLA paperwork," and was not automatically given FMLA protection after three days of absence. The Defendants do not appear to challenge the first three prongs of an FMLA analysis as articulated in *Righi*. The Defendants also do not argue that the Plaintiff has failed to meet the fifth prong, though it is unclear exactly what FMLA benefits the Plaintiff was denied. Instead, the Defendants argue that the Plaintiff has not met the fourth prong of a *Righi* analysis because she did not provide sufficient notice of her intent to seek protection under the FMLA.

The FMLA does not require an employer to give FMLA protection after an employee is absent for three days. Instead, the FMLA specifically allows employers to enforce their own internal leave policies in conjunction with FMLA leave. *Righi*, 632 F.3d at 411. The record indicates that supervisors had discretion to require medical documentation when appropriate, and to make no FMLA determination absent notice from the employee. Furthermore, "an employee's failure to comply with his employer's internal leave policies and procedures . . . forecloses an FMLA claim." *Id.* Here, the Plaintiff failed to comply with the requirement to submit medical documentation adequately describing her need to be absent. Gillig complied with procedures by requesting more information, and by not initiating the FMLA process when the Plaintiff had not requested it. Finally, the FMLA requires an employer to grant FMLA protection when the

42

employee gives sufficient notice of intent to invoke the FMLA, *id.* at 408, but providing a doctor's note is not sufficient notice "if the note does not convey the seriousness of her medical condition" and does not "indicate[] that she suffer[s] from a condition that would require an extended period of leave." *de la Rama*, 541 F.3d at 687. "The FMLA does not require employers to play Sherlock Holmes, scanning . . . for clues as to the undisclosed, true reason for an employee's absence." *Id.*

The record shows that the initial doctor's notes provided by the Plaintiff did not convey the seriousness of her medical condition or indicate that her condition would require extended leave. The Court therefore finds that the doctor's notes dated August 6, August 7, and October 17, 2007, did not give sufficient notice of the Plaintiff's intent to seek FMLA protection. The Plaintiff did not actually request FMLA protection until after she returned from her leave in August 2007, and when she requested it, it was granted. Although the Plaintiff requested FMLA protection through the IVR call-in system in October 2007, the record indicates no notice of this was ever provided to Gillig.[12] In any case, Gillig could not approve FMLA leave requests—only Lasley, the FMLA coordinator, could do that. The facts before the Court show that the Plaintiff failed to give adequate notice of any intent to invoke FMLA protections to Gillig, which explains why Gillig took the actions that she did. When the Plaintiff informed Lasley of her FMLA requests, both were approved. Accordingly, the Plaintiff's claims under the FMLA fail.

The Defendants also argue that even if the Plaintiff could make out an FMLA claim, summary judgment would still be appropriate because the Plaintiff cannot articulate any

---

[12]The Plaintiff has not denied that when she requested FMLA protection through the IVR call-in system in October 2007, she was automatically forwarded an FMLA packet with the paperwork necessary for claiming FMLA protection.

damages for her alleged violations of the FMLA. She claims to have been damaged when she

had to wait two weeks for one week of pay on two separate occasions, and when her medical

information was left lying on an office copy machine for approximately thirty minutes. As the

Defendants point out, while an employee may recover wages and actual damages under the

FMLA, an employee may not recover "punitive damages, nominal damages, or damages for

emotional distress." *Sons v. Henry Cnty.*, No. 1:05-cv-0516-DFH-TAB, 2007 WL 968726, at *2

(S.D. Ind. Mar. 13, 2007). The Plaintiff has only claimed damages for emotional distress for lost

wages and the documents being left on the copy machine. Such damages are not recoverable

under the FMLA. The Seventh Circuit has held that a plaintiff is "not entitled to any damages on

[an FMLA] claim" where "the violation caused him no injury." *Harrell*, 445 F.3d at 928. The

Plaintiff has failed to establish an injury that can be recovered under the FMLA. Accordingly,

even if the Plaintiff had shown FMLA violations, summary judgment in favor of the Defendants

would be appropriate.

Because the Plaintiff was never denied FMLA leave, failed to give Gillig appropriate

notice of her intent to seek FMLA protection, and has articulated no recoverable damages under

the FMLA, summary judgment will be entered in favor of the Defendants on the Plaintiff's

FMLA claims.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [ECF No. 67]

is GRANTED, the Plaintiff's Motion in Opposition to Defendants' Motion for Summary

Judgment [ECF No. 72] is DENIED, and the Defendant's Motion to Strike Plaintiff's

Memorandum in Opposition of Summary Judgment and Statements Contained in Plaintiff's Attached Affidavit [ECF No. 75] is GRANTED IN PART, DENIED IN PART, and DENIED IN PART AS MOOT.

      Accordingly, the Clerk is instructed to enter judgment in favor of the Defendants and against the Plaintiff.

      SO ORDERED on March 23, 2012.

                   s/ Theresa L. Springmann_____
                  THERESA L. SPRINGMANN
                  UNITED STATES DISTRICT COURT